UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KEITH TAYLOR,                                          :

                 Petitioner,                  :          07 Civ. 6318 (RJH) (GWG)

    -v.-                                              :          REPORT AND
                                                       RECOMMENDATION
THOMAS POOLE, Superintendent,                          :
Five Points Correctional Facility,

                                :
                 Respondent.
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Keith Taylor, currently an inmate at the Five Points Correctional Facility in Romulus, New York, has brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 12, 2000, a jury convicted Taylor of Conspiracy in the Second Degree, N.Y. Penal Law § 105.15; Attempted Murder in the Second Degree, N.Y. Penal Law §§ 110.00, 125.25(1); two counts of Assault in the First Degree, N.Y. Penal Law §§ 120.10(1), (2); two counts of Criminal Possession of a Weapon in the Second Degree, N.Y. Penal Law § 265.03; and two counts of Criminal Possession of a Weapon in the Third Degree, N.Y. Penal Law § 265.02(4). On August 1, 2000, Taylor was sentenced to an aggregate term of imprisonment of 48 1/3 years. On the same date, Taylor was also sentenced to an indeterminate term of imprisonment of 5 to 15 years pursuant to a 1997 guilty plea to one count of Attempted Criminal Sale of a Controlled Substance in the Third Degree, N.Y. Penal Law §§ 110.00, 220.39. Taylor raises 20 grounds for habeas relief, and seeks a stay of these proceedings in order to exhaust five of those grounds. For the reasons stated below, his petition and application for a stay should be denied.

I.    BACKGROUND

    A.    The 1997 Plea

On August 19, 1997, using the name Jim Tyler, Taylor entered a plea of guilty to one

count of Attempted Criminal Sale of a Controlled Substance in the Third Degree and two

misdemeanors, with a promise of a sentence of 45 days and probation.  (P. 5-6).[1]  Taylor

admitted that he sold cocaine to an undercover officer on August 13, 1997 (P. 6-7), possessed

crack cocaine on November 10, 1996 (P. 7-8), and possessed marijuana on November 21, 1996

(P. 8).  The court accepted Taylor's plea and set a sentencing date of September 11, 1997

(P. 10), but Taylor failed to appear for sentencing on that date (S. 15-16).[2]

    B.    State Trial Court Proceedings

More than a year later, on October 5, 1998, Taylor was indicted along with two co-

defendants for attempted murder and various other crimes relating to his activities on behalf of a

violent drug gang known as the "Dog Pound."  See Brief for Respondent ("Resp. App. Br.")

(annexed as Ex. B to Declaration in Opposition to the Petition for a Writ of Habeas Corpus, filed

Mar. 27, 2008 (Docket # 11) ("Resp. Decl.")), at 4.

At a trial lasting from June 12, 2000 to July 12, 2000, evidence was presented

establishing that Taylor was part of an organization called the Dog Pound, which sold crack

cocaine out of the Evans Hotel in midtown Manhattan using intimidation and violence to control

_____

    [1] "P." refers to the transcript of the plea proceedings held in People v. Tyler, No. 5899-97, on August 19, 1997.  See Transcripts of State Court Proceedings (Vol. I of III), filed Mar. 27, 2008 (Docket # 12).

    [2] "S." refers to the transcript of the sentencing proceedings held in this case on August 1, 2000.  See Transcripts of State Court Proceedings (Vol. III of III), filed Mar. 27, 2008 (Docket # 14).

its workers and protect its territory. The evidence presented included the testimony of numerous police officers who had made drug-related arrests in the vicinity of the Evans Hotel (Cerezo: Tr. 135-63; Rogan: Tr. 276-89; Mayeski: Tr. 289-306; Cummings: Tr. 306-40; Concilialdi: Tr. 350-58; Connor: Tr. 359-71; Torres: Tr. 372-414; Rivera: Tr. 541-67; Hernandez: Tr. 682-86; Callow: Tr. 849-54; Hill: Tr. 860-68; Cavanough: Tr. 869-77; Roe: 946-63; Brzostek: Tr. 964-67; Boehm: 1110-17; Dillon: Tr. 1275-83; Hamilton: Tr. 1284-94), as well as the testimony of cooperating witnesses who had participated in the drug trade near the hotel (Simpkins: Tr. 164-271; Black: Tr. 687-750; Palermo: Tr. 755-828; Shan: Tr. 1000-63; Smalls: Tr. 1121-1219).[3] One of these individuals, Nicole Palermo, a prostitute, testified that Taylor gave her money for selling bags of cocaine to her clients for $20, and that Taylor would keep $10 of each sale. (Palermo: Tr. 777-79). As a result of disputes about money earned from drug sales, Taylor would often beat her. (Palermo: Tr. 784-85; Cavallo: 658-66). Nicole Palermo also witnessed Taylor protecting the Dog Pound territory by beating up other sellers (Palermo: 781-82), and in one instance stabbing an individual (Palermo: Tr. 786-90).

There was also evidence presented at trial of two shootings in which Taylor was implicated. On August 27, 1996, Taylor and his co-defendants, Aaron Ennis and Sheldon Ennis, fired guns at a car driven by another drug dealer, and one of the passengers was shot in the back and paralyzed. The evidence relating to this shooting included testimony from the driver of the car (Brown: Tr. 1298-1555), the injured passenger (Moody: Tr. 907-45), another passenger

---

[3] "Tr." refers to the transcript of the trial held in this case between June 12, 2000 to July 12, 2000. See Transcripts of State Court Proceedings (Vol. II of III), filed Mar. 27, 2008 (Docket # 13); Transcripts of State Court Proceedings (Vol. III of III), filed Mar. 27, 2008 (Docket # 14).

(Hyndman: Tr. 1656-82), the police officers who assisted the injured passenger (Traina:
Tr. 1078-1103; Viola: Tr. 1104-08), the doctor who treated the passenger (Houten: Tr. 1233-54),
a crime scene officer (Bush: Tr. 1557-90), and a ballistics expert (Barry: Tr. 1593-1615).

On January 2, 1998, Taylor and Aaron Ennis entered a pool hall and confronted another
drug dealer, Errol Curling.  Taylor, Aaron Ennis, and Curling were all carrying guns.  Aaron
Ennis shot Curling in the face, Curling shot Taylor in the leg, and someone shot Curling in the
chest.  The evidence relating to this shooting included testimony from an officer who arrived on
the scene (Green: Tr. 76-126), emergency medical technicians (Preston: Tr. 127-34; Bastardo:
Tr. 834-48), an officer who interviewed Taylor at the emergency room (Fitzgerald: Tr. 531-40),
the doctor who treated Taylor (Mailapur: Tr. 1067-76), a ballistics expert (Ramirez: Tr. 968-96),
a witness from the pool hall, Constance Shan (Shan: Tr. 1025-30, 1056-62), and Curling
(Curling: Tr. 418-527).

After hearing the evidence, a jury convicted Taylor of Conspiracy in the Second Degree,
Attempted Murder in the Second Degree, two counts of Assault in the First Degree, two counts
of Criminal Possession of a Weapon in the Second Degree, and two counts of Criminal
Possession of a Weapon in the Third Degree.  (Tr. 2226-29).

At Taylor's sentencing on August 1, 2000, his attorney moved that the verdict be set
aside as against the weight of the evidence.  (S. 2-3).  The motion was denied.  (S. 3).  Taylor
admitted that he had a prior conviction in Massachusetts for unlawfully carrying a pistol on his
person and unlawful possession of ammunition, which was found to be a violent felony predicate
conviction.  (S. 3-8).  Taylor's attorney argued that the evidence at trial indicated Taylor's
involvement in the drug conspiracy had been "peripheral" (S. 19-20), and noted that Taylor had

4

himself been shot in one of the altercations (S. 18).  The trial judge opined that the evidence at

trial was "overwhelming" (S. 22), and found that there was "no possibility of rehabilitation" and

"[t]he only fair and just sentence is to remove [Taylor] from society for as long a period of time

as possible" (S. 23).  Taylor was sentenced to concurrent terms of 15 years for Assault, 15 years

for Criminal Possession of a Weapon in the Second Degree, and 7 years for Criminal Possession

of a Weapon in the Third Degree.  (S. 23-24).  These sentences were to run consecutively to

concurrent terms of 25 years for Attempted Murder, 25 years for Assault, 15 years for Criminal

Possession of a Weapon in the Second Degree, and 7 years for Criminal Possession of a Weapon

in the Third Degree.  (S. 24).  In addition, these sentences were consecutive to an indeterminate

term of 8 1/3 to 25 years for Conspiracy (S. 23), and an indeterminate term of 5 to 15 years for

Attempted Criminal Sale of a Controlled Substance in the Third Degree (S. 25).  The total

sentence imposed was 48 1/3 years for the convictions at trial, plus a term of 5 to 15 years for

Taylor's 1997 guilty plea for Attempted Criminal Sale of a Controlled Substance in the Third

Degree, which was to run consecutively.  (S. 24-25).  By operation of statute, the total sentence

is "deemed" to be a determinate sentence of 40 years.  See N.Y. Penal Law § 70.30(1)(e)(v)(A);

Resp. App. Br. at 45 n.11.

     C.     <u>State Court Appeals</u>

     Taylor appealed his conviction to the Appellate Division, First Department, on the

grounds that: (1) he was denied effective assistance of counsel when his trial attorney failed to

make a motion requesting severance of his trial from the trial of his co-defendants; (2) the

sentence imposed was excessive; and (3) the sentencing court erred in sentencing Taylor to a

term of 5 to 15 years on the 1997 plea without first giving him the opportunity to withdraw that

plea.  <u>See</u> Brief for Appellant ("Pet. App. Br.") (annexed as Ex. A to Resp. Decl.).  The

Appellate Division affirmed Taylor's convictions, holding:

> The record establishes that defendant received effective assistance of counsel.
> Trial counsel was not obligated to make a motion to sever defendant's trial from
> that of the codefendants, since there was no legal basis for such a motion.
> Furthermore, there is no indication that a separate trial would have resulted in a
> more favorable verdict for defendant.

<u>People v. Taylor</u>, 5 A.D.3d 333, 333 (1st Dep't 2004) (citations omitted).  The Appellate

Division held that it "perceive[d] no basis for reducing the sentences."  <u>Id.</u>  Regarding Taylor's

argument that he should have been given the opportunity to withdraw his 1997 plea, the

Appellate Division stated:

> Since defendant did not move to withdraw his plea, his claim that his sentence
> violated his plea agreement is unpreserved and we decline to review it in the
> interest of justice.  Were we to review this claim, we would reject it.  In any
> event, we note that defendant's aggregate sentence upon his trial and plea
> convictions is deemed to be 40 years, and that the sentence enhancement on the
> plea conviction had no practical effect on the aggregate term.

<u>Id.</u> (citations omitted).

Taylor then sought leave to appeal to the Court of Appeals on the same grounds.  <u>See</u>

Letter from Steven N. Feinman, Law Offices of Steven N. Feinman, to Chief Judge, Court of

Appeals (Apr. 9, 2004) (annexed as Ex. E to Resp. Decl.).  Leave was denied on June 23, 2004.

<u>See</u> <u>People v. Taylor</u>, 3 N.Y.3d 648 (2004).

D.    <u>Section 440.10 Motion</u>

On June 19, 2005, Taylor filed a pro se motion to vacate his conviction pursuant to N.Y.

Crim. Proc. Law § 440.10.  In his 440.10 motion, Taylor argued that his trial counsel was

ineffective because he: (1) he failed to adequately investigate the facts of Taylor's case, <u>see</u>

Memorandum of Law in Support of a Motion Pursuant to CPL 440.10 / CPL 440.20 (annexed as

Ex. H to Resp. Decl.) ("440.10 Mem.")[4], at 17-20; (2) failed to seek dismissal of the indictment on double jeopardy grounds, id. at 21; (3) failed to move for dismissal of the conspiracy charge on the basis of insufficient evidence, id. at 22-23; (4) failed to file a speedy trial motion, id. at 23-24; and (5) failed to challenge a "lockdown order" issued at the time of trial, which "prevented the defendant from even marginally participating in his defense," id. at 24-25. Taylor also argued that the trial judge denied him due process and interfered with his right to aid in his defense through a variety of acts, including the failure to order a severance of his trial, the failure to dismiss counts of the indictment, and the failure to provide him with new counsel.  Id. at 27-32.  Taylor further argued that the ex parte issuance of the lockdown order deprived him of due process and his right to aid in his own defense.  Id. at 33-36.  Taylor also contended that the prosecutor (1) "illegally held an off the record conversation with [Taylor] without his lawyer being present," id. at 37-39; (2) failed to hand over exculpatory evidence, id. at 39; (3) failed to disclose the full extent of a cooperation agreement, id. at 39-40; and (4) moved for a lockdown order against Taylor for the purpose of pressuring Taylor into cooperating, id. at 37.  Finally, Taylor argued that his sentence for the conspiracy charge must be reduced pursuant to the Drug Reform Act of 2004.  Id. at 42-44.

On January 23, 2007, the New York Supreme Court denied Taylor's Section 440.10 motion.  See Decision and Order, filed Jan. 23, 2007 (annexed as Ex. I to Resp. Decl.) ("440.10 Decision").  The court first noted that the Appellate Division had found that Taylor received effective assistance of counsel, id. at 2, and then addressed each of Taylor's alleged bases for his

---

[4]   The exhibits to the section 440.10 motion are annexed to the Supplemental Declaration in Opposition to the Petition for a Writ of Habeas Corpus, filed June 24, 2009 (Docket # 23) ("Supp. Decl.").

ineffective assistance claims.  The court held that Taylor's claim based on counsel's failure to move for dismissal of the conspiracy charge was procedurally barred inasmuch as it was record-based and should have been raised on direct appeal.  Id. at 3.  The court also held that this claim was without merit because "the defendant concedes in his own motion that a witness at trial testified to purchasing more than four (4) ounces of cocaine from one of the defendant's coconspirators."  Id.  The court next held that Taylor's claim based on counsel's failure to move for dismissal of the indictment on double jeopardy grounds was "without merit as these counts were properly charged in a superseding indictment."  Id.  Regarding Taylor's claim based on counsel's failure to bring a speedy trial motion, the court held that such claim was procedurally barred inasmuch as it was record-based and should have been raised on direct appeal.  Id.  The court further noted that "trial counsel was not required to make a speedy trial motion as it would not have been successful."  Id.  Finally, the court held that Taylor had not provided sufficient evidence to support his claim that counsel had failed to conduct an adequate investigation, id. at 3-4, inasmuch as Taylor failed to provide a copy of any retainer agreement and his argument was "based solely on his own affidavit, [was] purely speculative and not supported by the record," id. at 4.

Addressing Taylor's claim that the trial judge "denied him due process and interfered with his right to counsel through the issuance of a lockdown order and failure to provide him with new counsel," the court held this claim to be procedurally barred, noting that the "terms and conditions of the lockdown order are a matter of record and could have been raised on appeal but were not.  Similarly, any actions taken by the court in regard to the defendant's case were also matters of record which are properly raised on appeal."  Id.

8

The court also rejected Taylor's argument that "his due process rights and his right to counsel were violated by an ex parte communication by the trial assistant in which the defendant was threatened with enhanced prosecution if he failed to cooperate" because Taylor's allegation was "unsupported by any other affidavit or evidence, and under the circumstances attendant to the case, there is no reasonable possibility that such allegation is true." Id. (citing N.Y. Crim. Proc. Law § 440.30(4)(d)).[5]

Finally, the court denied Taylor's request for resentencing on the conspiracy charge because "[r]esentencing is only available to those persons who were convicted of either class A-I or A-II felony offenses defined in article 220 of the Penal Law." Id. at 4-5.

Taylor sought leave to appeal this decision to the Appellate Division. See Motion for a Certificate Granting Leave to Appeal, dated Feb. 7, 2007 (annexed as Ex. J to Resp. Decl.). The Appellate Division denied leave to appeal on March 29, 2007. See Certificate Denying Leave, entered Mar. 29, 2007 (annexed as Ex. M to Resp. Decl.).

    E.      Motion for Reconsideration, Reargument, and Renewal

Taylor filed an application for reconsideration of his Section 440.10 motion on February 14, 2007. See Motion for Reconsideration, Reargument and Renewal, dated Feb. 14, 2007 (annexed as Ex. N to Resp. Decl.) ("Mot. for 440.10 Recons."). Taylor argued that the decision denying his 440.10 motion: (1) improperly relied on a procedural bar to reject his ineffective assistance of counsel claims regarding failure to make a speedy trial motion and a motion to

---

[5] Although the order states that Taylor's prosecutorial misconduct claim is denied "pursuant to CPL 440.30(3)(d)," this appears to be a typographical error as the language of the surrounding discussion addresses the requirements of N.Y. Crim. Proc. Law § 440.30(4)(d). See 440.10 Decision at 4.

dismiss the conspiracy charge, id. at 9-10; (2) improperly denied his remaining ineffective assistance of counsel claims on the merits, id. at 10-12; (3) improperly relied on a procedural bar to reject his claims concerning the trial court's issuance of the lockdown order and failure to appoint new counsel, id. at 12-13; (4) improperly applied N.Y. Crim. Proc. Law § 440.30(4)(d) to his claims of prosecutorial misconduct, id. at 13-14; and (5) improperly rejected his ineffective assistance of counsel claim relating to counsel's failure to move to withdraw his plea, id. at 14-15.

Taylor also raised the following new arguments: (1) New York's program for assignment of counsel to indigent defendants was unconstitutional, id. at 17, 19-26; (2) the application of N.Y. Crim. Proc. Law §§ 440.10(2)(a) and (b) to his case violated equal protection and due process, id. at 17, 26-27; (3) he was entitled to production of documents under Judiciary Law § 2(b), id. at 18, 29-30; and (4) the procedure used to sentence him disproportionately affected African-American males, id. at 18, 28.

The trial court denied Taylor's motion, declining to reconsider its original decision and holding that "[a]ny additional arguments raised by the defendant are without merit."  Decision and Order, entered June 22, 2007 (annexed as Ex. O to Resp. Decl.) ("Denial of 440.10 Reargument").  Taylor sought leave to appeal the denial of his motion for reargument.  See Letter from Keith Taylor to Clerk, Appellate Division, First Department (June 29, 2007) (annexed as Ex. P to Resp. Decl.).  The Appellate Division denied leave to appeal on October 18, 2007.  See Certificate Denying Leave, entered Oct. 18, 2007 (annexed as Ex. Q to Resp. Decl.).

F.    Motion to be Furnished with Transcripts

On March 3, 2007, Taylor filed a motion in the Appellate Division seeking an order

directing the Clerk to provide him with transcripts of certain pre-trial proceedings.  See Motion

("Mot. for Transcripts"), dated Mar. 3, 2007 (annexed as Ex. G to Traverse/Reply, filed Jan. 9,

2009 (Docket # 21) ("Traverse")).  The Appellate Division denied Taylor's motion without

opinion on May 17, 2007.  See Decision, filed May 17, 2007 (annexed as Ex. R to Resp. Decl.).

Taylor sought leave to appeal to the Court of Appeals, which was denied on June 21, 2007.  See

Certificate Dismissing Application, dated June 21, 2007 (annexed as Ex. C to Amended Petition

for Writ of Habeas Corpus, filed Dec. 6, 2007 (Docket # 6) ("Am. Pet.")).  Taylor moved for

reargument of his application for leave to appeal on July 2, 2007, arguing that the Court of

Appeals requires that a coram nobis petition be supported by citations to the record and that as a

result the denial of his request for transcripts "interpose[d] financial consideration between an

indigent defendant and his exercise of the right to sue for his liberty," thereby "deny[ing] him the

equal protection of the law" and "creat[ing] a constitutional question."  Motion for Reargument,

dated July 2, 2007 (annexed as Ex. D to Am. Pet.), ¶ 4.  The Court of Appeals denied Taylor's

motion for reargument on July 19, 2007.  See Certificate Denying Reconsideration, dated July

19, 2007 (annexed as Ex. E to Am. Pet.).

Taylor submitted a motion for reargument to the Appellate Division on June 4, 2007.  See

Affidavit in Support, dated June 4, 2007 (annexed as Ex. U to Resp. Decl.).  The Appellate

Division denied his motion on August 2, 2007.  See Decision, filed Aug. 2, 2007 (annexed as

Ex. V to Resp. Decl.).

G.    The Instant Petition for Writ of Habeas Corpus

Taylor filed this petition for writ of habeas corpus on July 11, 2007, see Petition for Writ

of Habeas Corpus, filed July 11, 2007 (Docket # 2) ("Petition"), and an amended petition on

December 6, 2007, <u>see</u> Am. Pet.  In his amended petition, Taylor lists twenty grounds for relief:

Issue 1:    [He] was denied the effective assistance of counsel when [his] trial counsel failed to make a motion requesting the severance of [his] trial from that of [his] co-defendants' trials.

Issue 2:    The sentence imposed was harsh and excessive and imposed in violation of [his] right against Cruel and Inhumane Punishment.

Issue 3:    [He] was denied Due Process when the sentencing court, after it concluded that it could not comply with the plea bargain agreement which had been entered into by the trial court, failed to provide [him] with the opportunity to withdraw [his] guilty plea.

Issue 4:    [He] was denied Due Process, a Fair Trial, Equal Protection and the Effective Assistance of counsel when trial counsel, (1) failed to hire a private investigator or ballistics expert, (2) failed to file appropriate pre-trial and pre/post summation motions, and (3) failed to challenge a lockdown order which deprived [him] of the right to adequately assist in [his] own defense.

Issue 5:    The trial court deprived [him] of [his] right To Due Process, a Fair trial, and unjustly hampered [his] right to aid in [his] defense by several questionable orders and actions, including not granting [his] timely request for new counsel and auxiliary services.

Issue 6:    The lower court's issuing of an ex-parte lockdown order deprived [him] of the Constitutional right to . . . assist in [his] own defense and the Due Process right to challenge the validity and basis of the lockdown order before it was imposed.

Issue 7:    [He] was denied Due process, A Fair Trial, Equal Protection and the Assistance of Counsel when the prosecutor, (1) illegally held an off the record conversation with [him] without [his] lawyer being present, (2) failed to hand over Rosario and Brady material, (3) threatened [him] with enhanced prosecution, (4) failed to disclose the full scope of a cooperation agreement, and (5) brought an ex-parte motion before the court in order to prevent [him] from participating in [his] own defense.

Issue 8:    Because of the reclassification of the drug weights associated with the drug reform act of 2004, the conspiracy count must be reduced from Conspiracy in the Second Degree, to Conspiracy in the Fourth Degree.

Issue 9:     Because [he is] indigent, and the State mandates references to the Transcripts in order to establish a claim of Ineffective Assistance of Appellate Counsel, [his] right to Due Process and Equal Protection was violated when the Appellate Division refused to provide [him] with minutes of the proceedings to prepare a Coram Nobis Application in the Appellate Division, First Department.

Issue 10:    The trial Court's denial of some of [his] Ineffective Assistance of Counsel claims violated The Supreme Court's Holding in Massaro v. United States, 123 S. Ct. 1690.

Issue 11:    [He] was denied Due Process and fair review of [his] Constitutional Claims when the trial court denied [his] CPL 440.10 application utilizing procedural m[e]chanisms that were never intended to be used in the manner applied.

Issue 12:    [His] rights to Due Process, The Effective Assistance of Counsel, Equal Protection and a Fair Trial were violated by the unconstitutional new scale of the assigned counsel program.

Issue 13:    CPL 440.10(2)(a) and (b), under the facts of this case, are unconstitutional as they adversely affect a suspect class to which [he] belong[s], and violate[] well established Supreme Court precedent.

Issue 14:    Due Process and Equal Protection demands that an indigent defendant be able to utilize Judiciary Law 2(b) to compel the required documentation for use in post conviction proceedings.

Issue 15:    The procedures used to impose [his] 48 1/3 years sentence violates the holdings in Cunningham v. California.

Issue 16:    [He] was denied Due Process, A Speedy Trial, and the Effective Assistance of Appellate Counsel when the prosecutor took over two years to bring this indictment to trial, and [his] appellate counsel failed to bring this indictment to the attention of the trial court.

Issue 17:    [He] was denied Due process and the Assistance of Counsel by trial court's refusal to replace [his] trial counsel.

Issue 18:    [He] was denied a Fair Trial, Due Process, and trial by valid indictment when [he] was tried for Conspiracy to commit a Class "A" drug felony, but there was never any evidence of a class "A" felony submitted at trial, or to the Grand Jury.

Issue 19:   [He] was denied Due Process and a Fair Trial when the trial co[ur]t failed
to give the requested Justification charge.

Issue 20:   [He] was denied Due Process and a Fair Trial when the trial court failed to
give the requested corroboration charge.

Am. Pet. ¶ 9 (citations omitted).  Taylor seeks a stay of his petition in order to exhaust Issues 16

through 20 in a petition for writ of coram nobis.  See id. ¶ 10.  Taylor further requests that this

Court order New York State officials to provide him copies of the transcripts, exhibits, and

documents necessary to prepare his coram nobis petition.  See id. ¶ 13.

Respondent filed papers in opposition to the petition.  See Respondent's Memorandum of

Law in Opposition to the Petition for a Writ of Habeas Corpus, filed Mar. 27, 2008 (Docket

# 10) ("Resp. Mem."); Resp. Decl.; Supp. Decl.  Taylor then submitted a document labeled

"Traverse" and a memorandum of law in support of the Traverse.  See Traverse; Memorandum

of Law in Support of Petitioner's Traverse/Reply, filed Jan. 9, 2009 (Docket # 22) ("Pet.

Mem.").

II.    GOVERNING LEGAL PRINCIPLES

A.    Review of Claims in Habeas Corpus Petitions

A petition for a writ of habeas corpus may not be granted with respect to any claim that

has been "adjudicated on the merits" in the state courts unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or (2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence presented in the
State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d),

14

it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted).  As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited.  Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir.) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), cert. denied, 546 U.S. 889 (2005). Moreover, a state court's determination of a factual issue is "presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Habeas relief is available under the "'unreasonable application'" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.  Rather, the state court's application must have been "objectively unreasonable." Id. at 409.  The "determination of whether a court has unreasonably

15

applied a legal standard depends in large measure on the specificity of the standard in question."

Brisco v. Ercole, 565 F.3d 80, 89 (2d Cir. 2009).  "The more general the rule, the more leeway

courts have in reaching outcomes in case-by-case determinations" inasmuch as the application of

a general standard to a specific case "can demand a substantial element of judgment."

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Brisco, 565 F.3d at 90 (court

applying a "fact-dependent standard . . . to the facts of a specific case is . . . entitled to significant

'leeway' when [a habeas court] review[s] its decision for reasonableness") (quoting Yarborough,

541 U.S. at 664)).

Only holdings of the Supreme Court are considered for purposes of determining "clearly

established Federal law."  See Rodriguez v. Miller, 537 F.3d 102, 106 (2d Cir. 2008) (citation

omitted).  Thus, "[n]o principle of constitutional law grounded solely in the holdings of the

various courts of appeals or even in the dicta of the Supreme Court can provide the basis for

habeas relief."  Id. at 107 (citation omitted).  Where there is "[n]o holding" from the Supreme

Court on the question presented, Carey v. Musladin, 549 U.S. 70, 77 (2006), or where Supreme

Court cases "give no clear answer" to the question presented in the petition, Wright v. Van

Patten, 552 U.S. 120, 128 S. Ct. 743, 747 (2008), a state court's decision cannot be contrary to or

an unreasonable application of clearly established federal law.

     B.     Exhaustion

Habeas corpus relief under 28 U.S.C. § 2254 is available to a petitioner held in state

custody in violation of the Constitution or a federal law or treaty.  See 28 U.S.C. § 2254(a).

"Before a federal court may grant habeas relief to a state prisoner," however, "the prisoner must

exhaust his remedies in state court."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28

U.S.C. § 2254(b)(1)(A). The Supreme Court has held that:

> [b]ecause the exhaustion doctrine is designed to give the state courts a full and
> fair opportunity to resolve federal constitutional claims before those claims are
> presented to the federal courts, . . . state prisoners must give the state courts one
> full opportunity to resolve any constitutional issues by invoking one complete
> round of the State's established appellate review process.

O'Sullivan, 526 U.S. at 845; accord Smith v. Duncan, 411 F.3d 340, 347 (2d Cir. 2005).  Thus, a

petitioner is required to have presented each claim to all available levels of the state courts.  See,

e.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("the prisoner must fairly present his claim in

each appropriate state court (including a state supreme court with powers of discretionary

review)") (citations and internal quotation marks omitted).  The petitioner must also have fairly

presented the "federal nature" of each claim to the state courts.  Id.; Duncan v. Henry, 513 U.S.

364, 365-66 (1995) (per curiam); Rosa, 396 F.3d at 217.

     C.     Claims That Are Procedurally Barred

     The Second Circuit has summarized the law governing habeas review of claims

dismissed under state procedural law as follows:

> This court is generally procedurally barred from considering a ruling that "fairly
> appear[s] to rest primarily on state procedural law." Jimenez v. Walker, 458 F.3d
> 130, 138 (2d Cir. 2006) (citation omitted).  Even where the state court has ruled
> on the merits of a federal claim "in the alternative," federal habeas review is
> foreclosed where the state court has also expressly relied on the petitioner's
> procedural default.  Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (citation
> omitted).  To bar federal habeas review, however, the state court's decision must
> rest not only on an independent procedural bar under state law, but also on one
> that is "adequate to support the judgment." Jimenez, 458 F.3d at 138.

> A state procedural bar is "adequate" if it "is firmly established and regularly
> followed by the state in question" in the specific circumstances presented in the
> instant case.  Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (citation
> omitted).  The "guideposts" for analyzing the issue of adequacy, articulated in the
> context of a procedural default occurring at trial, are:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.
>
> Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citation omitted).  The Cotto guideposts also apply to testing the adequacy of a procedural default raised in a state collateral proceeding.  See, e.g., Clark v. Perez, 450 F. Supp. 2d 396, 426 (S.D.N.Y. 2006)[, rev'd on other grounds, 510 F.3d 382 (2d Cir.), cert. denied, 129 S. Ct. 130 (2008)].  Because of comity concerns, a decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (citation omitted).

Murden v. Artuz, 497 F.3d 178, 191-92 (2d Cir. 2007), cert. denied, 127 S. Ct. 1083 (2008).  The Second Circuit has cautioned, however, that "the Cotto factors are not a three-prong test: they are guideposts to aid inquiry . . . there is no need to force square pegs into round holes."  Clark, 510 F.3d at 391.

If a claim is procedurally barred, a petitioner may obtain review of the claim only if he demonstrates "cause and prejudice for the procedural default," or that the "constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." Dretke v. Haley, 541 U.S. 386, 393 (2004) (citations and internal quotation marks omitted); accord Murden,  497 F.3d at 194; Doe v. Menefee, 391 F.3d 147, 159-63 (2d Cir. 2004), cert. denied, 546 U.S. 961 (2005); DiGuglielmo v. Smith, 366 F.3d 130, 135-36 (2d Cir. 2004).

III.   <u>DISCUSSION</u>

    A.    <u>Ineffective Assistance of Trial Counsel (Issues 1, 4, 10, 11, 12 & 13)</u>

Under Issues 1 and 4, Taylor argues that he was denied the effective assistance of counsel

when his trial counsel (1) failed to move for severance of Taylor's trial from that of his co-

defendants; (2) failed to hire a private investigator or ballistics expert; (3) failed to file

appropriate pre/post-summation motions; and (4) failed to challenge the lockdown order.  <u>See</u>

Am. Pet. ¶¶ 9(1), (4); Pet. Mem. at 2-10, 18-29.  Under Issues 10, 11, and 13, Taylor challenges

the application of procedural bars to these claims.  <u>See</u> Am. Pet. ¶¶ 9(10), (11), (13); Pet. Mem.

at 10-18, 43-46.  Under Issue 12, Taylor argues that his rights to due process, equal protection,

effective assistance of counsel, and a fair trial were violated by the unconstitutional "scale" of

New York's assigned counsel program.  <u>See</u> Am. Pet. ¶ 9(12); Pet. Mem. at 15-16, 46-50.

    1.    <u>Failure to Move for Severance of Taylor's Trial (Issue 1)</u>

Taylor argues that he was denied effective assistance of counsel when his trial counsel

failed to move for severance of his trial from that of his co-defendants.  <u>See</u> Pet. App. Br. at 57-

63; Pet. Mem. at 3-10.  Taylor raised this claim on direct appeal, and the Appellate Division

dismissed it, holding that "[t]he record establishes that [Taylor] received effective assistance of

counsel," and that Taylor's attorney "was not obligated to make a motion to sever" because

"there was no legal basis for such a motion" and "no indication that a separate trial would have

resulted in a more favorable verdict."  <u>Taylor</u>, 5 A.D.3d at 333 (citations omitted).  Because this

claim was denied on the merits, the question before this Court is whether that decision was

"contrary to, or involved an unreasonable application of, clearly established Federal law."  28

U.S.C. § 2254(d)(1).

To show ineffective assistance of counsel, a petitioner must satisfy both prongs of the two-part test articulated in Strickland v. Washington, 466 U.S. 668, 687-96 (1984). The Strickland test has been characterized as "rigorous" and "highly demanding." Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001) (citations omitted); accord Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (comparing a successful ineffective assistance of counsel habeas claim to "thread[ing] [a] needle"). To meet the Strickland standards, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688, and (2) "any deficiencies in counsel's performance [were] prejudicial to the defense," id. at 692; accord Rompilla v. Beard, 545 U.S. 374, 380, 390 (2005); Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). In evaluating the first prong – whether counsel's performance fell below an objective standard of reasonableness – "judicial scrutiny . . . must be highly deferential," and the petitioner must overcome the "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689) (internal quotation marks and bracketing omitted). "[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation." United States v. Nersesian, 824 F.2d 1294, 1322 (2d Cir.) (citing United States v. Afflerbach, 754 F.2d 866, 870 (10th Cir. 1985)), cert. denied, 484 U.S. 958 (1987). In order to satisfy the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Lynn v. Bliden, 443 F.3d 238, 247-48 (2d Cir. 2006), cert. denied, 549 U.S. 1257 (2007).

20

Here, Taylor argues that a reasonable attorney would have moved for severance because the evidence against him was relatively much weaker than the evidence against his co-defendants.  See Pet. Mem. at 3-10.  He further argues that even if the trial court had denied the motion, a reasonable attorney would have moved for severance in order to preserve the issue for appeal, because "while a trial court must look at the case prospectively to see if there is a danger of prejudice, a reviewing court must apply the law retroactively, using the benefit of a full record."  Id. at 9 (citation omitted).  Taylor also claims that he was prejudiced by his counsel's failure to move for severance, in that he "was found guilty of Conspiracy not because of the evidence against him . . . but because of the evidence against his codefendants and the cooperators."  Id. at 9-10.

N.Y. Crim. Proc. Law § 200.40(1) provides that a court may grant a motion for severance on a showing of "good cause," which includes a showing that the defendant "will be unduly prejudiced by a joint trial."  In People v. Mahboubian, 74 N.Y.2d 174 (1989), the New York Court of Appeals noted that "in all cases a strong public policy favors joinder, because it expedites the judicial process, reduces court congestion, and avoids the necessity of recalling witnesses," id. at 183, and although "[s]ome degree of prejudice is of course inherent in every joint trial . . . that alone does not outweigh the factors favoring joinder of defendants," id. at 183-84.  "[S]everance is compelled where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt."  Id. at 184.

The Court cannot find that Taylor's counsel acted unreasonably in deciding that the good cause standard for requiring severance was not met.  Taylor's defense was not in "irreconcilable

conflict" with that of his co-defendants.  Indeed, Taylor's arguments on this petition demonstrate

no such irreconcilable conflict.  Taylor's defense was that there was insufficient evidence that he

had participated in the shootings at the pool hall (Tr. 1798-99) or on the street (Tr. 1799-1806),

and that there was no evidence that Taylor had been involved in a conspiracy to sell drugs (Tr.

1806-24).  Sheldon Ennis' defense was that the evidence was inadequate to establish the

existence of a conspiracy (Tr. 1836, 1868-76), and that the testimony relating to the drive-by

shooting was not credible, so that there was no way to know who had been shooting that day (Tr.

1836, 1857-68).  Aaron Ennis' defense was that the testimony relating to the drive-by shooting

and the pool hall shooting was unreliable (Tr. 1887-97, 1904-11), and that there was insufficient

evidence of a conspiracy to sell drugs (Tr. 1911-19).  There is no "irreconcilable conflict"

between these defenses.

     As Taylor has failed to demonstrate a reasonable likelihood that a severance motion

would have been successful before the trial court, his claim that his attorney was ineffective for

failing to bring that motion must fail.  See generally Morenito v. Fischer, 409 F. Supp. 2d 170,

177 (W.D.N.Y. 2006) (failure to bring a severance motion is not ineffective assistance where

"there is no reasonable likelihood that defense counsel would have succeeded in convincing the

trial court that the two defendants' defenses were antagonistic, mutually exclusive or

irreconcilable"); Aramas v. Donnelly, 2002 WL 31307929, at *17 (S.D.N.Y. Oct. 15, 2002)

("claim that trial counsel was ineffective for failing to request a severance (or oppose joinder)

lacks merit because the Court sees no likelihood that a severance motion would have been

granted") (internal quotation marks and bracketing omitted) (listing cases).

     Moreover, even if Taylor could demonstrate that a reasonable attorney would have

moved for severance, he has not demonstrated prejudice from his attorney's failure to do so, as

he has not shown that the evidence presented at a severed trial would have differed in any way

from that presented at the trial of his co-defendants.  Because Taylor and his co-defendants were

charged with conspiracy, much if not all of the same evidence would have been admissible at

both trials.  See generally Coughman v. United States, 2001 WL 830677, at *2 (S.D.N.Y. July

24, 2001) (failure to bring a severance motion was not ineffective assistance where, "[s]ince

[petitioner and his co-defendant] were co-conspirators, much of the evidence admissible against

[the co-defendant] would have been admissible against [the petitioner] even in a separate trial,

and a motion for severance would have been futile") (citation omitted); McFarlane v. Warden,

Clinton Corr. Facility, 1996 WL 1086330, at *5 (E.D.N.Y. Oct. 8, 1996) (no prejudice shown

where the same witness would have been called at a separate trial).

  In sum, Taylor's ineffective assistance of counsel claim as to the severance motion is

without merit and thus the Appellate Division's decision on this point was neither contrary to nor

an unreasonable application of any clearly established federal law.

     2.  Failure to Hire Private Investigator or Ballistics Expert (Issue 4)

  Under Issue 4, Taylor argues that he was denied effective assistance of counsel when his

trial counsel "failed to hire a private investigator or ballistics expert."  Am. Pet. ¶ 9(4).  Taylor

raised this claim in his 440.10 motion.  See 440.10 Mem. at 14, 17-20.  In the 440.10 motion,

Taylor characterized his claim as the failure to hire a private investigator or a ballistics expert

"pursuant to a retainer agreement."  Id. at 14.  In support of this claim, Taylor submitted his own

affidavit (written in the form of questions and answers), several diagrams of the pool hall, and a

diagram of the scene of the car shooting.  See Affidavit in Support of 440.10 Motion (annexed as

Ex. H to Resp. Decl.), ¶ 7; Affidavit of Keith Taylor, dated June 11, 2005 (annexed as Ex. F to

Supp. Decl.); Pool Hall Diagrams (annexed as Ex. G to Supp. Decl.); Street Diagram (annexed

as Ex. H to Supp. Decl.).  The New York Supreme Court dismissed this claim, holding that the

claim was unsupported by evidence – specifically because Taylor had failed to provide a copy of

the retainer agreement and had offered no evidence at all other than his own affidavit, which was

"speculative and not supported by the record."  440.10 Decision at 3-4.  Because this claim was

adjudicated on the merits, the question before this Court is whether that decision was "contrary

to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C.

§ 2254(d)(1).

As an initial matter, Taylor has not even established that his attorney actually failed to

visit the pool hall and/or speak to the pool hall employees.  It is possible that the attorney visited

the pool hall, interviewed its employees, and found the evidence unhelpful or made a strategic

determination not to use it.  In any event, Taylor has not shown that his attorney's actions rose to

the level of ineffective assistance of counsel.  While failure to conduct adequate pre-trial

investigation may serve as the basis for a claim of ineffective assistance of counsel under

Strickland, see 466 U.S. at 690-91, a petitioner must do more than make vague, conclusory, or

speculative claims as to what evidence could have been produced by further investigation, see,

e.g., Curry v. Burge, 2004 WL 2601681, at *31 (S.D.N.Y. Nov. 17, 2004) (Conclusory claims

"give no indication as to what exculpatory evidence a proper investigation would have revealed,

or how such evidence would have benefitted [petitioner's] case.  There is also no way to know

that trial counsel did not consider investigating these claims but simply rejected them as being

unpromising."); McPherson v. Greiner, 2003 WL 22405449, at *25 (S.D.N.Y. Oct. 22, 2003)

(listing cases); <u>Polanco v. United States</u>, 2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000)

("Such undetailed and unsubstantiated assertions that counsel failed to conduct a proper

investigation have consistently been held insufficient to satisfy either <u>Strickland</u> prong.")

(collecting cases); <u>Lamberti v. United States</u>, 1998 WL 118172, at *2 (S.D.N.Y. Mar. 13, 1998)

(claims were "vague and conclusory" where they did not "identify counsel's asserted failings

with any specificity or show how any different conduct might have changed the result");

<u>Madarikan v. United States</u>, 1997 WL 597085, at *1 (E.D.N.Y. Sept. 24, 1997) (denying

ineffective assistance claim based on failure to investigate or interview witnesses; petitioner's

"allegations of ineffective assistance are conclusory, and give no indication as to what

exculpatory evidence may have been revealed by an investigation").  Rather, "[a] petitioner

alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the

burden of providing the court sufficiently precise information, that is, a comprehensive showing

as to what the investigation would have produced."  <u>Halo v. United States</u>, 2007 WL 1299158, at

*13 (E.D.N.Y. Apr. 30, 2007) (quoting <u>Simmons v. Gramley</u>, 915 F.2d 1128, 1133 (7th Cir.

1990)); <u>see also</u> <u>Mocombe v. United States</u>, 2005 WL 730566, at *3 (S.D.N.Y. Mar. 31, 2005)

("An attorney's failure to investigate is considered reasonable unless there is some indication

that the investigation would have changed the result of the proceeding.  Mere speculation that

the investigation may lead to a different outcome is insufficient.") (citations omitted); <u>Perez v.

United States</u>, 274 F. Supp. 2d 330, 333 (E.D.N.Y. 2003) ("[E]ven though [petitioner] asserts

how he thinks this evidence may have assisted him at trial, his allegations do not rise to the level

of prejudice in support of a constitutional violation.  [Petitioner] has not shown that the outcome

of the trial would have been different but for counsel's alleged failure to investigate . . . .").

25

Moreover, where a petitioner claims that counsel should have investigated potential witnesses, the petitioner must demonstrate that the witnesses would have testified at trial and explain the expected nature of the witnesses' testimony.  See, e.g., Carr v. Senkowski, 2007 WL 3124624, at *21 (W.D.N.Y. Oct. 23, 2007) ("[A] petitioner does not show that he was prejudiced by trial counsel's alleged deficient performance merely by asserting that certain witnesses might have supplied relevant testimony; rather, he must state exactly what testimony they would have supplied and how such testimony would have changed the result.") (emphasis in original); Charles v. United States, 2006 WL 208838, at *4 n.5 (N.D.N.Y. Jan. 19, 2006) ("Conspicuously absent from this allegation is any showing of what testimony the witnesses . . . would have offered in Petitioner's defense, or how this testimony would have led to a different trial result."); Carneglia v. United States, 2006 WL 148908, at *4 (E.D.N.Y. Jan. 18, 2006) (rejecting challenge based on failure to call defense witnesses where "petitioner has not provided affidavits from the potential witnesses nor any assurance they would have appeared at trial had counsel interviewed them").

As noted, Taylor couched his claim to the trial court primarily as a contractual claim: that is, a claim that the attorney violated the retainer agreement by failing to retain an investigator and a ballistics expert.  But, nothing in case law suggests that a mere failure to abide by a provision in a retainer agreement demonstrates ineffective assistance of counsel.  Moreover, as the trial court noted, Taylor has not supplied a copy of this agreement and thus the state court had insufficient basis to conclude that it had been violated.

The remainder of Taylor's argument hinges on his contention that it was physically "impossible" for one witness at the pool hall, Constance Shan, to have seen who began the

shooting, 440.10 Mem. at 17-18, because she was sleeping on benches in a corner of the hall, id. at 17. But Shan did not testify that she saw who began the shooting (Shan: Tr. 1027). Rather, she testified that she saw Taylor leaving the hall with a gun after she was awakened and ran to a counter to call the police (Shan: Tr. 1027-29; 1058-59). Taylor also asserts that Shan could not have seen him leave because she was "stooped down behind" the counter. 440.10 Mem. at 18. But Shan testified that she was able to look "over the counter" to see Taylor running out. (Shan: Tr. 1028). Thus, nothing in Taylor's submission to the state court suggested that additional investigation at the pool hall would have yielded anything of value.[6]

In sum, Taylor has not shown that an investigation would have produced exculpatory evidence or that any such evidence would have made any difference in this matter. Accordingly, the Court cannot find that the state court unreasonably found that there was no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

       3.    Failure to File Pre- and Post-Summation Motions (Issues 4, 10, 11 & 13)

a. The Procedural Bar. Taylor argues that he was denied effective assistance of counsel when his trial counsel "failed to file appropriate pre-trial and pre/post summation motions." Am. Pet. ¶ 9(4). Taylor argues that his trial counsel should have moved for dismissal of the conspiracy charge and for dismissal on speedy trial grounds. See Pet. Mem. at 18-26. Taylor

---

[6] Taylor also asserts briefly that ballistics evidence from the car shooting would have been helpful to him, 440.10 Mem. at 20, but his claim on this point is wholly conclusory. He merely asserts that ballistic evidence would have shown that shots were fired from inside the car where the victim, Billy Moody, was riding. Id. But Taylor provides no evidence that ballistics tests in fact would have so indicated. Moreover, even if there were shots fired from inside the car at some point in the confrontation, this does nothing to controvert the evidence that Taylor fired a gun (Tr. 1380-82, 1468, 1548-49) and that Moody was severely injured (Tr. 925-26).

raised these claims on his 440.10 motion, and the New York Supreme Court held that each was

"procedurally barred pursuant to CPL 440.10(2)(c) as it is record based and was not raised on

appeal."  440.10 Decision at 3.  Under section 440.10(2)(c),

> [T]he court must deny a motion to vacate a judgment when: . . . Although
> sufficient facts appear on the record of the proceedings underlying the judgment
> to have permitted, upon appeal from such judgment, adequate review of the
> ground or issue raised upon the motion, no such appellate review or determination
> occurred owing to the defendant's unjustifiable failure to take or perfect an appeal
> during the prescribed period or to his unjustifiable failure to raise such ground or
> issue upon an appeal actually perfected by him[.]

N.Y. Crim. Proc. Law § 440.10(2)(c).

Under the Cotto guideposts, this procedural bar is an "adequate" state ground barring

habeas review.  The application of the first guidepost is "meaningless" because the procedural

bar relates to Taylor's failure to raise an issue at all.  Garvey v. Duncan, 485 F.3d 709, 719 (2d

Cir. 2007); accord Clark, 510 F.3d at 391 n.4.  As for the second guidepost, New York courts

routinely deny motions under section 440.10(2)(c) where a defendant has previously failed to

raise record-based arguments on appeal.  See, e.g., People v. Diaz, 14 Misc. 3d 1211(A), at *2

(Sup. Ct. 2006); People v. Jean, 14 Misc. 3d 1208(A), at *1-2 (Sup. Ct. 2006).  Federal courts

have upheld this procedural bar as foreclosing review of habeas claims.  See, e.g., Sweet v.

Bennett, 353 F.3d 135, 141 (2d Cir. 2003); Van Stuyvesant v. Conway, 2007 WL 2584775, at

*14-15 (S.D.N.Y. Sept. 7, 2007); Kellam v. Hunt, 2007 WL 2005544, at *4 (S.D.N.Y. July 10,

2007); Drayton v. Mazzuca, 2006 WL 762842, at *5 (S.D.N.Y. Mar. 24, 2006).  Finally, Taylor

did not substantially comply with the procedural rule inasmuch as he failed to raise this claim at

all on appeal.  See generally Pet. App. Br.[7]

      b.  Relief from the Procedural Bar. Habeas review would not be barred if Taylor could "demonstrate either cause and actual prejudice, or that he is actually innocent."  St. Helen v. Senkowski, 374 F.3d 181, 183-84 (2d Cir. 2004) (citation omitted), cert. denied, 543 U.S. 1058 (2005).  Taylor argues that he has shown cause for his failure to bring these claims on direct appeal.  See Pet. Mem. at 13-15.

      Taylor first asserts the ineffective assistance of his appellate counsel as cause for his failure to raise ineffective assistance of trial counsel on direct appeal.  Id. at 13-14.  In Murray v. Carrier, 477 U.S. 478 (1986), the Supreme Court recognized that ineffective assistance of counsel may serve as cause for a procedural default.  See id. at 488.  However, the Court also held that the exhaustion doctrine "requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  Id. at 489.

      Taylor points to his section 440.10 motion as fulfilling this requirement.  See Pet. Mem. at 14.  But neither his 440.10 motion nor his motion for reargument made a claim of ineffective assistance of appellate counsel.  See 440.10 Mem.; Mot. for 440.10 Recons.[8]  In any event, in New York State, a claim of ineffective assistance of appellate counsel must be presented by

---

    [7]  Although Taylor requested permission to file a pro se brief before the Appellate Division, this request was denied and thus no issues other than those contained in his appellate brief were ever raised.

    [8]  While Taylor did refer to ineffective assistance of appellate counsel in his motion to be furnished with trial transcripts, see Mot. for Transcripts, this motion merely sought access to materials that would assist him in raising ineffective assistance of appellate counsel claims in a future application.

means of a petition for writ of error coram nobis and not by means of a collateral attack on a

conviction.  See People v. Bachert, 69 N.Y.2d 593, 597-98 (1987).  Indeed, Taylor elsewhere

explicitly acknowledges that his claims of ineffective assistance of appellate counsel are

unexhausted and seeks a stay of these proceedings in order to exhaust them, see Am. Pet. ¶ 10, a

request that is discussed below, see section III.G.  In sum, because Taylor has failed to present

his ineffective assistance of appellate counsel "as an independent claim" in the state courts, it

cannot serve as cause for his procedural default.  Murray, 477 U.S. at 489.

       Taylor's second asserted cause for his failure to raise ineffective assistance of counsel on

direct appeal is that "the assigned counsel program has for years been in constitutional decline, a

fact the State has been made aware through numerous reports . . . .  Therefore, the affects [sic] of

assigned counsel program . . . qualifies as an objective factor external to the defense which

impeded both trial and appellate counsel's ability to comply with the State's procedural rules."

Pet. Mem. at 14-15.  Taylor cites to the portion of Murray noting that compliance with a

procedural rule is excused where "some objective factor external to the defense impeded

counsel's efforts to comply with the State's procedural rule."  477 U.S. at 489.  But Taylor has

not shown that any "decline" in the assigned counsel program actually "impeded" his appellate

counsel's performance.  Rather, Taylor's complaint is simply that his appellate counsel failed to

raise certain claims.

       Taylor's third asserted cause for failure to raise this claim on direct appeal is that the

application of this procedural bar "disproportionately affects indigent defendants."  Pet. Mem. at

15.  Although Taylor characterizes this as a "cause" for his failure to comply with the procedural

rule, it is essentially the same as one of his arguments against its application, which he restates

under Issue 13 of his Petition, and which we discuss in section III.A.3.c below.

Finally, Taylor argues that the procedural bar should not be applied to him because he is "actually innocent" as demonstrated by the lack of corroboration of the cooperating witnesses' testimony, his assertion that he was a victim of the shooting in the pool hall, and his claim that the prosecution failed to establish a necessary element of the conspiracy charge. See Pet. Mem. at 16-17. However, these assertions are far from sufficient to overcome the procedural bar. An actual innocence claim "requires petitioner to support his allegations of constitutional error with new reliable evidence." Schlup v. Delo, 513 U.S. 298, 324 (1995); accord Menefee, 391 F.3d at 161 (actual innocence claim must be supported "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial") (quoting Schlup, 513 U.S. at 324); Parreno v. Annetts, 2006 WL 689511, at *9 (S.D.N.Y. Mar. 20, 2006). In addition:

> "To demonstrate actual innocence a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). This requires "a stronger showing" than the showing of prejudice necessary to prevail on an ineffective assistance claim. Id. Actual innocence requires "not legal innocence but factual innocence." Menefee, 391 F.3d at 162.

Murden, 497 F.3d at 194.

The bases raised by Taylor do not constitute "new evidence," but merely Taylor's own views as to what inferences should have been drawn by the jury regarding the evidence admitted at trial, his own contentions as to what actually occurred at the pool hall, and legal arguments regarding the quality of the evidence presented at trial. None of this is sufficient to constitute a showing of "actual innocence."

Thus, Taylor has shown neither cause and prejudice nor actual innocence – the bases articulated in case law that permit relief from the application of a state procedural bar.

c.  Other Arguments Regarding the Procedural Bar (Issues 10, 11, 13).  Taylor makes several additional arguments against the application of a procedural bar to his claims, none of which have merit.  First, Taylor argues that the application of a procedural bar to his ineffective assistance of counsel claims "violated [t]he Supreme Court's [h]olding in Massaro v. United States," Am. Pet. ¶ 9(10); see Pet. Mem. at 15-16, 43-45.  Massaro v. United States, 538 U.S. 500 (2003), held that an ineffective assistance of counsel claim in a federal case may be brought as a collateral attack under 28 U.S.C. § 2255, even though the petitioner could have brought the claim on direct appeal.  See 538 U.S. at 504.  Taylor argues that the Supreme Court's "factual findings" in Massaro that "there should be but one forum used to decide both the record and non-record issues concerning counsel's deficient performance" created a "clearly developed Supreme Court precedent," and that the state court's application of a procedural bar was therefore "a violation of the 'contrary to' clause of 28 U.S.C. § 2254(d)(1)."  Pet. Mem. at 44.  But the Second Circuit has made clear that Massaro did not affect a state's power to require that ineffective assistance claims be brought on direct appeal.  See Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003) ("Section 2254, unlike § 2255, contains an exhaustion rule, 28 U.S.C. § 2254(b)(1)(A), as well as a rule requiring deference to state courts, 28 U.S.C. § 2254(d), underscoring the necessity that defendants raise their claims in state courts first.  Massaro does not address the concerns of comity and federalism, essential to § 2254 and the independent and adequate state ground doctrine.").

Taylor also argues that he was denied due process because the procedural bar was "never

intended to be used in the manner applied." Am. Pet. ¶ 9(11). He argues that the statement in
N.Y. Crim. Proc. § 440.10(3)(a) that "[t]his paragraph does not apply to a motion based upon
deprivation of the right to counsel at the trial" also applies to section 440.10(2). See Pet. Mem.
at 12-13. But section 440.10(2) is a different "paragraph" from section 440.10(3), and New
York State courts routinely deny motions under section 440.10(2)(c) where a defendant has
previously failed to raise ineffective assistance of counsel arguments on appeal. See, e.g.,
People v. Lopez, 2006 WL 3962056, at *6 n.6 (Sup. Ct. Dec. 21, 2006); People v. Samuels, 2006
WL 4050815, at *13 (Sup. Ct. Dec. 21, 2006); People v. Hylton, 2005 WL 2623684, at *4 (Sup.
Ct. Oct. 14, 2005).

    Finally, Taylor argues that New York Crim. Proc. Law §§ 440.10(2)(a) and (b) are
"unconstitutional as they adversely affect a suspect class to which [he] belong[s], and violates
[sic] well established Supreme Court precedent." Am. Pet. ¶ 9(13). It is unclear what Taylor's
claim is, however, as neither section 440.10(2)(a) nor section 440.10(2)(b) were relied on in any
of the state court decisions rejecting Taylor's claims. Nor does Taylor explain this argument in
his memorandum of law. In his motion for reargument of his 440.10 motion, Taylor included a
brief section entitled "CPL 440.10(2)(a), (b) violates equal protection and due process," in which
he argued that the application of these procedural bars to defendants who were represented
through New York's assigned counsel program violated Equal Protection. See Mot. for 440.10
Recons. at 26-27. Assuming Taylor intended to argue that the application of the procedural bar
in section 440.10(2)(c) to his claims of ineffective assistance of counsel violated the Equal
Protection clause, this claim must fail because Taylor has offered no evidence at all in support of
his conclusory assertion that this procedural rule discriminates against a particular protected

class.  While Taylor offers the existence of a class action lawsuit and press releases related to

that lawsuit as evidence of disparate impact, <u>see</u> Exs. B, C to Traverse, this does not constitute

proof of any of his assertions, even if he could have shown they were relevant to any viable

claim.

           4.      <u>Failure to Make a Double Jeopardy Motion (Issue 4)</u>

In his section 440.10 motion, Taylor argued that he was denied effective assistance of

counsel when his trial counsel failed to move for dismissal of the second indictment on double

jeopardy grounds, <u>see</u> 440.10 Mem. at 21, and he has incorporated this argument into his petition

for habeas corpus, <u>see</u> Affidavit/Attachment to Petition ¶ 10(4); Am. Pet. ¶¶ 3-5.  Taylor argues

that he "was previously indicted in relationship to both shootings," that "[t]he indictments were

dismissed and sealed," and that the shootings "were later resurrected as part of the conspiracy

indictment."  440.10 Mem. at 21.  The New York Supreme Court rejected this claim as "without

merit as these counts were properly charged in a superseding indictment."  440.10 Decision at 3.

Taylor's claim that his trial counsel was ineffective for failing to move for dismissal of

the indictment on double jeopardy grounds must fail because such a motion would not have been

successful.  Jeopardy does not attach until a trial jury is empaneled and sworn.  <u>See</u> <u>Serfass v.</u>

<u>United States</u>, 420 U.S. 377, 388 (1975); <u>United States v. Joyner</u>, 201 F.3d 61, 79 (2d Cir. 2000),

<u>cert.</u> <u>denied</u>, 540 U.S. 1201 (2004); <u>United States v. White</u>, 980 F.2d 836, 842 (2d Cir. 1992).

As there is no claim that a jury was empaneled as a result of the first indictment, the second

indictment could not have subjected Taylor to double jeopardy.

           5.      <u>Failure to Challenge the Lockdown Order (Issue 4)</u>

Taylor argues that he was denied effective assistance of counsel when his trial counsel

34

failed to challenge a lockdown order that was issued during his trial.  See Am. Pet. ¶ 9(4); Pet. Mem. at 26-28.  Taylor raised this claim in his 440.10 motion.  See 440.10 Mem. at 24-25.  In that motion, Taylor asserted that the lockdown order "prevented the defendant from even marginally participating in his defense."  Id. at 25.  No further specifics are given as to why this is so, except to refer to the portion of the 440.10 motion in which Taylor attacks the issuance of the lockdown on the merits.  In the latter portion of the motion, 440.10 Mem. at 33-36, Taylor argues: (1) that the process for issuing the lockdown order was improper and that it was unjustified on the ground that the order was issued based on an ex parte application by the prosecution, see id. at 34-35; and (2) that the order contained onerous restrictions, such as denying him access to "copies [of legal papers], stamps, or carbon paper or legal assistance," id. at 35.

In the opinion denying Taylor's 440.10 motion, the New York Supreme Court acknowledged that Taylor had raised the claim, see 440.10 Decision at 2, but did not address this claim specifically, see id.  The Court denied Taylor's motion "in its entirety," id. at 5, but did not explain whether the denial of Taylor's claim of ineffective assistance relating to the lockdown order was based on a procedural bar or on the merits.  The respondent asserts that the New York Supreme Court relied on the procedural bar of N.Y. Crim. Proc. Law § 440.10(2)(c) in denying this claim.  See Resp. Mem. at 23-24.  The respondent is mistaken in this respect, however, as the state court's decision was silent on its reasoning when it denied Taylor's claim.

Turning to the merits of the claim, in light of the "rigorous" and "highly demanding" nature of the Strickland test, Pavel, 261 F.3d at 216, we cannot conclude that Taylor's trial counsel was ineffective for failing to challenge the lockdown order.  As previously noted, in

determining whether a petitioner has shown "that counsel's representation fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, "judicial scrutiny . . . must be highly deferential," and the petitioner must overcome the "presumption that, under the circumstances, the challenged action might be considered sound trial strategy," Bell, 535 U.S. at 698 (quoting Strickland, 466 U.S. at 689) (internal quotation marks omitted).  The lockdown order was issued after the trial court made a finding that Taylor had "recently been engaging in conduct that raises serious, well-founded and legitimate concerns that he is seeking to threaten, intimidate and/or injure potential witnesses and those whom he perceives as persons who may testify against him and his criminal organization."  Lockdown Order at 1.  Given that New York has given discretion to trial judges to issue such orders when demanded by security concerns as part of the "inherent" authority of a court, see Alvarez v. Snyder, 264 A.D.2d 27, 35-37 (1st Dep't 2000), and that such orders merely affect "conditions of . . . confinement" and thus do not justify reversal of a conviction, People v. Whitt, 304 A.D.2d 378, 378 (1st Dep't), lv. denied, 100 N.Y.2d 589 (2003), the Court cannot find that counsel acted unreasonably in not seeking to challenge it.  There is nothing on the face of the lockdown order suggesting that its enforcement was incompatible with the defendant's ability to obtain a fair trial.  Thus, Taylor has not demonstrated that an effort to challenge the lockdown order would have been successful.  Nor has he shown that he was prejudiced by his attorney's failure to challenge it.  Thus, Taylor has failed to show that his trial counsel was ineffective for failing to challenge the lockdown order.[9]

---

[9]  For the first time in his traverse memorandum, Taylor asserts that he was never visited by counsel and that his phone calls were made in the presence of corrections officers "in direct violation of the attorney-client privilege."  Pet. Mem. at 26.  Taylor's claim in state court, however, did not raise these points; rather, he challenged the lockdown order on its face.  Indeed, Taylor's state court claim only mentioned the lockdown order's effect on attorney-client

6.     Constitutionality of the Assigned Counsel Program (Issue 12)

Taylor argues that his "rights to Due Process, The Effective Assistance of Counsel, Equal

Protection and a Fair Trial were violated by the unconstitutional new scale of the assigned

counsel program." Am. Pet. ¶ 9(12).  As is plain from his motion for reargument, where this

argument was first raised, Taylor is referring to the "pay scale" for assigned counsel in New

York State.  Mot. for 440.10 Recons. at 20.  The trial court dismissed the argument as "without

merit" without further discussion.  See Denial of 440.10 Reargument.  Taylor does not argue the

claim in his papers filed in this court other than to argue generally that the assigned counsel

program is unconstitutional.  See Pet. Mem. at 46-50.  There is no clearly established federal

law, however, requiring a certain pay scale for attorneys.  Rather, there is entitlement to effective

assistance of counsel, as articulated in Strickland.  Thus the claim regarding pay accorded

assigned counsel does not provide a basis for reversal of his conviction.

B.     Claims Related to Sentencing (Issues 2, 3, 8 & 15)

Taylor raises various claims regarding his sentence under Issues 2, 3, 8, and 15.  He

argues that (1) his sentence was "harsh and excessive"; (2) his sentence should be reduced in

---

communications once, in passing, in the "facts" section of his memorandum in support of his
440.10 motion.  See 440.10 Mem. at 11 ("the order also caused severe restrictions with
communication attempts with [Taylor's] attorney").  Even this passing mention of
"communication attempts" cited only to a copy of the lockdown order itself.  Id.  Thus, Taylor
did not "fairly present" this claim to the state court, Baldwin, 541 U.S. at 29, and we do not
consider these new allegations here.

Taylor also argues that the lockdown order denied him access to the law library, see
Affidavit/Attachment to Am. Pet. ¶ 24; 440.10 Mem. at 12, 35, but the lockdown order indicated
that Taylor was permitted to receive books from the law library if he so requested, "to the extent
that such services (a) would ordinarily be available to him if he was not on lock-in feed-in status
and (b) can reasonably be provided to him in his housing area."  Lockdown Order, dated Mar. 9,
2000 (annexed as Ex. A to Traverse), ¶ 21.

light of the Drug Reform Act of 2004; (3) the procedures used to impose his sentence violated

Supreme Court precedent; and (4) he was denied due process when the sentencing court failed to

provide him with an opportunity to withdraw his prior guilty plea.  See Am. Pet. ¶¶ 9(2), (3), (8),

(15).

       1.    Excessive Sentence (Issue 2)

      Taylor argues that his sentence of 40 years "was harsh and excessive and imposed in

violations of [his] right against Cruel and Inhumane [sic] Punishment."  Am. Pet. ¶ 9(2); see Pet.

Mem. at 31-34.  Taylor raised this claim on direct appeal, and the Appellate Division dismissed

it on the merits, holding that it "perceive[d] no basis for reducing the sentences."  Taylor, 5

A.D.3d at 333 (citations omitted).

      Because a habeas court must grant considerable deference to legislatively mandated

terms of imprisonment, successful challenges to sentences are "exceedingly rare."  See Hutto v.

Davis, 454 U.S. 370, 374 (1982) (per curiam) (citation omitted).  Indeed, the Second Circuit has

broadly stated that "[n]o federal constitutional issue is presented where . . . the sentence is within

the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per

curiam) (citation omitted); accord Pinero v. Greiner, 519 F. Supp. 2d 360, 371, 389 (S.D.N.Y.

2007); Diaz v. Herbert, 317 F. Supp. 2d 462, 479-80 (S.D.N.Y. 2004); Herrera v. Artuz, 171

F. Supp. 2d 146, 151 (S.D.N.Y. 2001); Sutton v. Herbert, 39 F. Supp. 2d 335, 337 n.1 (S.D.N.Y.

1999).

      Taylor does not allege that his sentence falls outside the range of sentences permitted by

New York law.  Instead, he argues that his sentence should not have been enhanced in light of

his prior convictions, see Pet. Mem. at 32-33; that the sentence was intended to punish him for

exercising his right to a trial, as he asserts that the court had previously approved a plea offer of

five to fifteen years, id. at 33-34; and that the sentence imposed was not proportional to the

evidence presented at trial, id. at 34.

As an initial matter, Taylor's status as a predicate offender did not alter the maximum

sentence permitted. Compare N.Y. Penal Law § 70.02(3)(a)-(c) (term of a determinate sentence

for a violent felony offender is 5 to 25 years for a class B felony, 3 1/2 to 15 years for a class C

felony, and 2 to 7 years for a class D felony) with N.Y. Penal Law § 70.04(3)(a)-(c) (term of a

determinate sentence for a second violent felony offender is 10 to 25 years for a class B felony, 7

to 15 years for a class C felony, and 5 to 7 years for a class D felony).  Thus, even if Taylor had

not been adjudicated as having a predicate conviction, his sentences were within the range

prescribed by state law.

Taylor argues that he was punished for going to trial, contending that he was offered a far

lesser sentence in a plea bargain. See Pet. Mem. at 33-34.[10]  Taylor gives very little information

regarding the plea offer, and cites to no evidence to support this claim. Id.  Even if Taylor did

receive an offer of a lower sentence as part of a plea bargain, this would not permit the

conclusion that the sentence he ultimately received showed that the judge sentenced him

vindictively for refusing the plea deal.  "[T]he mere fact that the court, following conviction,

imposed a sentence . . . approaching the maximum legal limit does not, in itself, demonstrate

actual vindictiveness."  Naranjo v. Filion, 2003 WL 1900867, at *10 (S.D.N.Y. Apr. 16, 2003)

(citing cases); see also Taplin v. Rabideau, 2008 WL 2559374, at *17 (N.D.N.Y. June 23, 2008)

---

[10]  It does not appear that Taylor made this argument in any of his submissions to the
state court and thus this aspect of his sentencing claim is unexhausted.  We deny it on the merits,
however, as is permitted by 28 U.S.C. § 2254(b)(2).

("The fact that the court, following conviction, imposed the maximum sentence does not, in itself, demonstrate actual vindictiveness.") (citing Corbitt v. New Jersey, 439 U.S. 212, 219 (1978)); Bailey v. Ercole, 2007 WL 4707738, at *13 (S.D.N.Y. Aug. 17, 2007) ("When a sentence imposed at the conclusion of a trial is greater than the sentence a prosecutor had been willing to recommend as part of a plea offer, the disparity does not, without more, establish vindictiveness.") (citing cases); Thomas v. Kuhlman, 2003 WL 21294065, at *7 (E.D.N.Y. Apr. 8, 2003) ("[F]ederal habeas courts cannot set aside state court sentences on the ground that they are unnecessarily punitive. As a general matter, the question is only whether the sentence was within the authorized range.") (citing White, 969 F.2d at 1383). As the Supreme Court has noted, a defendant in plea bargaining circumstances will often be "confronted with the 'certainty or probability' that, if he determines to exercise his right to plead innocent and to demand a jury trial, he will receive a higher sentence than would have followed a waiver of those rights." Chaffin v. Stynchcombe, 412 U.S. 17, 30-31 (1973) (internal citation omitted). The Court, however, has also stated that "the imposition of these difficult choices . . . [is] an inevitable attribute of any legitimate system which tolerates and encourages the negotiation of pleas." Id. at 31. Because there is no evidence that the sentencing judge imposed Taylor's sentence only because Taylor had previously refused to accept a plea bargain allegedly offered, there is no basis for habeas relief.

Finally, Taylor argues that his sentence was "not proportional to the evidence the prosecutor developed against [him]." Pet. Mem. at 34. The Eighth Amendment prohibits "extreme sentences that are grossly disproportionate to the crime." United States v. Snype, 441 F.3d 119, 152 (2d Cir.) (citing cases) (internal quotation marks omitted), cert. denied, 549 U.S.

40

923, <u>reh'g denied</u>, 549 U.S. 1090 (2006); <u>accord</u> <u>Solem v. Helm</u>, 463 U.S. 277, 288 (1983). This, however, is not one of the "rare instances" where a "'reviewing court . . . [is] required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.'"  <u>Bethea v. Scully</u>, 834 F.2d 257, 261 (2d Cir. 1987) (quoting <u>United States v. Ortiz</u>, 742 F.2d 712, 714 (2d Cir.), <u>cert. denied</u>, 469 U.S. 1075 (1984)).  It is enough to say that a sentence of 40 years is not grossly disproportionate for a predicate felon who was convicted of attempted murder, conspiracy, criminal sale of a controlled substance, two counts of assault, and multiple counts of criminal possession of a weapon.

### 2.   Resentencing Under the Drug Reform Act of 2004 (Issue 8)

Taylor argues that "[b]ecause of the reclassification of the drug weights associated with the drug reform act of 2004, the conspiracy count must be reduced from Conspiracy in the Second Degree, to Conspiracy in the Fourth Degree," Am. Pet. ¶ 9(8), and that his sentence must be reduced accordingly, <u>see</u> Pet. Mem. at 35.  Taylor raised this claim in his 440.10 motion, <u>see</u> 440.10 Mem. at 42-44, and the New York Supreme Court denied it, holding that "[r]esentencing is only available to those persons who were convicted of either class A-I or A-II felony offenses defined in article 220 of the Penal Law," 440.10 Decision at 4-5.  Taylor contends that "this [claim] is cognizable on habeas corpus review" but does not explain why.  Pet. Mem. at 35. Because Taylor's argument relies solely on New York state law, it cannot be heard here.  <u>See</u>, <u>e.g.</u>, <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law"); <u>Vasquez v. Walker,</u> 2004 WL 594646, at *4 (S.D.N.Y. Mar. 25, 2004) ("[v]iolations of state statutory rights are not reviewable by federal habeas courts").

### 3.   Effect of *Cunningham v. California* (Issue 15)

Taylor argues that the "procedures used to impose . . . [his] sentence violate[d] the holdings in Cunningham v. California, [127 S. Ct. 856 (2007)]," Am. Pet. ¶ 9(15), which held that a jury, not a judge, must find facts that expose a criminal defendant to an elevated sentence under the terms of a statute.  Taylor raised this claim in his motion for reargument of his 440.10 motion, see Mot. for 440.10 Recons. at 48, and the Court denied it summarily as "without merit," Denial of 440.10 Reargument.  The respondent argues that Taylor "cannot be heard to argue that the procedures used to sentence him . . . violated the holding of Cunningham" because that case was decided after the date Taylor's conviction became final and that, "[i]n any event, the procedures used to sentence petitioner did not violate Cunningham."  Resp. Mem. at 42.  In his traverse, Taylor argues that the state's argument as to the non-retroactivity of Cunningham is "patently erroneous and misleading" because the right established in Cunningham had been previously established in Apprendi v. New Jersey, 530 U.S. 466 (2000).  Pet. Mem. at 51-52. Taylor argues that the Sixth Amendment requires that the facts necessary to impose consecutive sentences rather than concurrent sentences be determined by the jury or admitted by the defendant, and that in his case the jury's verdict could only support concurrent sentences.  See id.

It is not necessary to reach the question of retroactivity because the scheme under which Taylor was sentenced is constitutionally valid.  The only determination necessary for the trial judge to impose consecutive sentences was whether Taylor's offenses were "committed through a single act."  N.Y. Penal Law § 70.25(2).  While Taylor argues that this determination by the trial judge violated the Supreme Court's holding in Apprendi, the Supreme Court recently held that the allocation of responsibility for this sort of determination to judges is not contrary to the

Sixth Amendment or the Court's holding in Apprendi.  In Oregon v. Ice, 129 S. Ct. 711 (2009),

the Court held that the Sixth Amendment does not require that juries, rather than judges, find

facts necessary to impose consecutive sentences.  Id. at 714-15.  In that case, the trial judge made

a factual finding that the two burglaries with which the defendant was charged did not "arise

from the same continuous and uninterrupted course of conduct" but instead constituted "separate

incidents."  Id. at 715 (citations and internal punctuation omitted).  The Court rejected the claim

that these findings were required to be made by a jury.  The Court explained: "There is no

encroachment here by the judge upon facts historically found by the jury, nor any threat to the

jury's domain as a bulwark at trial between the State and the accused.  Instead, the defendant –

who historically may have faced consecutive sentences by default – has been granted by some

modern legislatures statutory protections meant to temper the harshness of the historical

practice."  Id. at 718.

Thus, Taylor's Sixth Amendment rights were not violated when the trial judge made the

determination that his offenses were not "committed through a single act," N.Y. Penal Law

§ 70.25(2), and sentenced him to consecutive terms of imprisonment.

### 4.    Opportunity to Withdraw the Guilty Plea (Issue 3)

Taylor argues that he was "denied Due Process when the sentencing court, after it

concluded that it could not comply with the plea bargain agreement [relating to his 1997 plea]

. . . , failed to provide [him] with the opportunity to withdraw [his] guilty plea."  Am. Pet. ¶ 9(3).

Taylor raised this claim on direct appeal, and the Appellate Division dismissed it, holding that

the claim was unpreserved because Taylor never moved to withdraw his plea.  See Taylor, 5

A.D.3d at 333.  The court further noted: "Were we to review this claim, we would reject it.  In

any event . . . defendant's aggregate sentence upon his trial and plea convictions is deemed to be 40 years, and . . . the sentence enhancement on the plea conviction had no practical effect on the aggregate term." Id. (citations omitted). The respondent acknowledges that the state court accepted Taylor's plea "without informing petitioner on the record of the conditions attached to the plea and the consequences of violating those conditions," Resp. Mem. at 3, and that Taylor might have been permitted to withdraw his plea had the motion been timely filed in light of New York case law indicating that "where there is ambiguity as to the consequences of breaching the plea agreement, courts may not impose an enhanced sentence after defendant's breach," id. at 35 n.9 (citations omitted). However, the respondent argues that this claim is procedurally barred because Taylor did not move for withdrawal before sentencing, see id. at 33, and Taylor has shown neither cause for his failure to comply with the procedural requirement nor prejudice from its application to his case, id. at 34-35.

Taylor responds that a motion to withdraw a guilty plea may be made in a 440.10 motion, that he made a claim of ineffective assistance of counsel for failure to withdraw the plea, and that this claim essentially operated as a motion to withdraw his plea. See Pet. Mem. at 35-36. Taylor argues that the respondent's acknowledgment that a motion to withdraw the plea might have been successful, combined with Taylor's attempt to withdraw the plea through a 440.10 motion, permits this Court to review his claim. Id. at 36.

As an initial matter, Taylor's section 440.10 motion does not clearly raise a claim of ineffective assistance of counsel for failure to move to withdraw the plea inasmuch as counsel's failure to inform Taylor of that possibility was only briefly mentioned in the recitation of facts, see 440.10 Mem. at 8, and never argued in Taylor's motion or memorandum. In any event,

44

nothing in the section 440.10 papers or elsewhere in the record suggests that Taylor has ever sought as relief a withdrawal of the guilty plea.  In his motion, Taylor did not alert the court to any error in the sentencing, but merely stated that he was "sentenced on his plea based on enhanced factors not present at the time of the plea" and that he "was never advised by his attorney that he could withdraw his plea."  Id.  Thus, Taylor's claim that he was improperly denied the opportunity to withdraw his plea is unexhausted.

In light of the fact that this is an unexhausted claim, we deem it to be withdrawn from the petition because if we did not deem it withdrawn, we would be compelled to dismiss Taylor's habeas corpus petition in its entirety on the ground that it is a "mixed petition" – that is, one containing both exhausted and unexhausted claims.  See, e.g., Rhines v. Weber, 544 U.S. 269, 274 (2005); accord Pliler v. Ford, 542 U.S. 225, 230 (2004) ("[F]ederal district courts must dismiss mixed habeas petitions.").[11]  Taylor has not sought a stay to exhaust this particular claim and, in any event, nothing in the record would justify granting a stay inasmuch as he has not shown "good cause" for the failure to present the claim earlier.  See Rhines, 544 U.S. at 278.  To the contrary, the record reflects that Taylor has been aware that he was required to move to withdraw his guilty plea since at least March 30, 2004, when the Appellate Division specifically stated that the proper manner in which to challenge any sentence attributable to his plea was to move to withdraw the plea.  Taylor, 5 A.D.3d at 333.

---

[11]  The Court assumes that Taylor would prefer to have this claim omitted from his petition rather than having the entire petition dismissed.  If, however, he prefers to have the entire petition dismissed, the Court would do so upon his request.

C.    Lockdown Order (Issue 6)

In addition to challenging his attorney's failure to challenge the lockdown order (discussed in section III.A.5 above), Taylor makes a substantive attack on the order.  He argues that the trial court's issuance of "an ex-parte lockdown order deprived [him] of the Constitutional right to . . . assist in [his] own defense and the Due Process right to challenge the validity and basis of the lockdown order before it was imposed."  Am. Pet. ¶ 9(6).  Taylor raised this claim on his 440.10 motion, see 440.10 Mem. at 33-36, and the New York Supreme Court dismissed it, holding that it was procedurally barred inasmuch as it was record-based and should have been raised on direct appeal, see 440.10 Decision at 4.  The respondent argues that this claim is procedurally barred, that Taylor has shown neither cause for his failure to comply with the procedural requirement nor prejudice from its application to his case, and that the claim is without merit because the lockdown order was justified and did not hinder Taylor's ability to aid in his defense.  See Resp. Mem. at 35-37.  Taylor argues that this claim cannot be adjudicated without the communication logs maintained under the lockdown order, and urges this Court to obtain those logs for in camera review.  See Pet. Mem. at 36-37.

Taylor's claim with respect to the lockdown order has changed to some degree from the claim made in the 440.10 motion to the claim made in this federal habeas action.  In the 440.10 motion, Taylor argued: (1) that there was a denial of due process with regard to the procedures used to issue the order and the justification for it, including the fact that the order was issued based on an ex parte application by the prosecution, see 440.10 Mem. at 34-35; and (2) that the order contained onerous restrictions, such as denying him access to "copies [of legal papers], stamps, or carbon paper or legal assistance," id. at 35.  The 440.10 motion is clear, however, that

46

Taylor's complaint is that the terms of the lockdown order itself were improper – not that the lockdown order was not complied with.

As the trial court held, the claims Taylor made about the lockdown order in his 440 motion were record-based and thus he was required to have raised them on direct appeal.  <u>See</u> 440.10 Decision at 4.  The contents of the lockdown order and the application therefor were part of the record before the trial court.  As was previously discussed, <u>see</u> section III.A.3, the bar contained in section 440.10(2)(c) operates as an adequate and independent state ground to prevent habeas relief.  Thus, this claim cannot be considered here.

Taylor's Amended Petition focuses on the fact that the terms of the lockdown order require that certain "logs and reports" be generated and that he is entitled to have these logs.  Pet. Mem. at 36-37 (citing Lockdown Order at 2, 5).  The specific pages he cites to require logs tracking attorney telephone calls and requests for law library, commissary, and religious services.  <u>See</u> Lockdown Order at 2, 5.  While Taylor insists that he needs these logs to pursue his federal habeas petition, there is no reason why these logs would have any bearing on the claim actually made in his section 440.10 motion: that is, a claim that the procedure used to issue the lockdown order and the terms of the lockdown order itself were constitutionally improper.

In any event, even if we were to ignore the procedural bar to this claim and consider it on the merits, Taylor has not pointed to any clearly established federal law that forbids the issuance of such an order.  Notably, there seems to be nothing improper about the lockdown order on its face.  The order states that it was issued after the trial court made a finding that Taylor had "recently been engaging in conduct that raises serious, well-founded and legitimate concerns that he is seeking to threaten, intimidate and/or injure potential witnesses and those whom he

perceives as persons who may testify against him and his criminal organization." Id. at 1.  As

has been noted by one New York State court, "even if we were to find the lockdown order to be

procedurally improper, we would find no basis for reversal, because the order, in and of itself,

only affected the conditions of defendant's confinement."  Whitt, 304 A.D.2d at 378.  There is

nothing in the order itself that shows the violation of any constitutional right.  To the extent

Taylor is arguing that the order by its terms prevented him from gaining access to needed

materials from the law library, we would reject such an assertion inasmuch as the lockdown

order states that Taylor was permitted to receive books from the law library if he so requested,

"to the extent that such services (a) would ordinarily be available to him if he was not on lock-in

feed-in status and (b) can reasonably be provided to him in his housing area."  Lockdown Order

¶ 21.

     D.     <u>Prosecutorial Misconduct (Issue 7)</u>

     Taylor argues that the prosecutor: (1) had a conversation with him in the absence of his

lawyer and threatened him with enhanced prosecution; (2) failed to deliver Rosario and Brady

materials; (3) "failed to disclose the full scope of a cooperation agreement"; and (4) moved for

an ex parte lockdown order in order to prevent Taylor from aiding in his own defense.  Am. Pet.

¶ 9(7).  Taylor raised this claim on his 440.10 motion, see 440.10 Mem. at 37-41, and the Court

dismissed it on the basis that it was unsupported by evidence, see 440.10 Decision at 4.  In doing

so, the Court relied on N.Y. Crim. Proc. Law § 440.30(4)(d), which provides:

> [T]he court may deny [a 440.10 motion] without conducting a hearing if . . . [a]n
> allegation of fact essential to support the motion (i) is contradicted by a court
> record or other official document, or is made solely by the defendant and is
> unsupported by any other affidavit or evidence, and (ii) under these and all the
> other circumstances attending the case, there is no reasonable possibility that such
> allegation is true.

N.Y. Crim. Proc. Law § 440.30(4)(d).  The Court held that Taylor's allegation of prosecutorial misconduct was "unsupported by any other affidavit or evidence, and . . . there is no reasonable possibility that such allegation is true."  440.10 Decision at 4.  Because courts in the Second Circuit are divided over whether denial pursuant to N.Y. Crim. Proc. Law § 440.30 operates as a procedural bar or an adjudication on the merits, see, e.g., Skinner v. Duncan, 2003 WL 21386032, at *27 (S.D.N.Y. June 17, 2003) (listing cases), this Court will proceed to the merits of this claim because it can be disposed of on that basis.

The scope of review for allegations of prosecutorial misconduct in the habeas context is "quite limited."  Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998).  To prevail on such a claim, a petitioner must show that the prosecutor engaged in "egregious misconduct . . . amount[ing] to a denial of constitutional due process."  Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974); accord Tankleff, 135 F.3d at 252; Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990).  The defendant must also show "substantial prejudice" resulting from the alleged misconduct.  United States v. Fell, 531 F.3d 197, 209 (2d Cir. 2008), reh'g denied, 571 F.3d 264 (2009); United States v. Parkes, 497 F.3d 220, 233 (2d Cir. 2007), cert. denied, 128 S. Ct. 1320, reh'g denied, 128 S. Ct. 1929 (2008).

Taylor's first argument is that the prosecutor had a conversation with him outside the presence of his attorney, in which the prosecutor threatened Taylor with enhanced prosecution if he refused to cooperate.  See Pet. Mem. at 37-38; 440.10 Mem. at 38-39.  While, as the state court recognized, these allegations appear incredible on their face, even if we accept arguendo that the meeting occurred, Taylor has not shown any prejudice arising out of the visit itself or the threats allegedly made during the visit.  At most, he has alleged that the visit prompted the

49

prosecutor either to seek the lockdown order or "increase[] the lockdown orders deprivations" as a result of this conversation.  Pet. Mem. at 38; see also 440.10 Mem. at 39.  As previously discussed, however, Taylor does not have a valid claim with respect to restrictions placed upon him by the lockdown order.  Thus, his effort to attribute any restrictions to prosecutorial misconduct similarly cannot succeed.

Taylor also argues that the prosecutor withheld evidence that should have been given to him under People v. Rosario, 9 N.Y.2d 286 (1961) and Brady v. Maryland, 373 U.S. 83 (1963). See 440.10 Mem. at 39.  Taylor contends that the prosecutor withheld exculpatory statements made by witnesses at each of the shootings indicating that shots were fired in Taylor's direction. Id.

Taylor's Rosario claims, however, are state-law claims not cognizable on federal habeas review.  See, e.g., Ferrer v. Artus, 2008 WL 2434143, at *3 (S.D.N.Y. June 11, 2008); Bloomfield v. Senkowski, 2008 WL 2097423, at *30 (E.D.N.Y. May 15, 2008); Van Stuyvesant v. Conway, 2007 WL 2584775, at *21 (S.D.N.Y. Sept. 7, 2007); Collins v. Artus, 496 F. Supp. 2d 305, 317 (S.D.N.Y. 2007); Bethune v. Superintendent, Bare Hill Corr. Facility, 299 F. Supp. 2d 162, 165 (W.D.N.Y. 2004); Alston v. Ricks, 2003 WL 42144, at *6 (S.D.N.Y. Jan. 7, 2003); Green v. Artuz, 990 F. Supp. 267, 274 (S.D.N.Y. 1998).  Thus, we do not consider them further.

Under the Brady doctrine, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  Brady, 373 U.S. at 87.  A "true Brady violation" has three components: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or

inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). The problem with Taylor's argument is that he has provided no evidence that any of the evidence he seeks actually existed. Without any showing that the evidence existed, Taylor has no basis to claim that the government withheld it. See, e.g., Green v. Walsh, 2006 WL 2389306, at *19 (S.D.N.Y. Aug. 17, 2006) ("it is the petitioner's burden to demonstrate that the [Brady] evidence in question actually existed at the time of trial, and was withheld from production"); Mallet v. Miller, 432 F. Supp. 2d 366, 378 (S.D.N.Y. 2006) ("mere speculation that exculpatory evidence was withheld is not sufficient under Brady, and the Court cannot compel the production of evidence that is not known to exist"); Ross v. McCoy, 2001 WL 30451, at *5 (S.D.N.Y. Jan. 10, 2001) ("The state is under no obligation to produce evidence that did not exist."). Thus, Taylor's Brady claim must fail.

Taylor further argues that the prosecutor "failed to disclose the full scope of a cooperation agreement." Am. Pet. ¶ 9(7). Taylor contends that one cooperating witness was promised leniency not only in this case, as was disclosed to defense counsel, but also in another case. See 440.10 Mem. at 39-40. But Taylor has provided no evidence in support of this claim and thus it must be rejected on that basis alone.

Finally, Taylor argues that the prosecutor brought the ex parte motion for a lockdown order in order to prevent Taylor from aiding in his own defense. See Am. Pet. ¶ 9(7); 440.10 Mem. at 39. Taylor offers no evidence in support of his allegation that the prosecutor had an improper motive in obtaining the lockdown order. The trial court specifically found that a lockdown order was warranted in light of "serious, well-founded and legitimate concerns that [Taylor] is seeking to threaten, intimidate and/or injure potential witnesses and those whom he

51

perceives as persons who may testify against him and his criminal organization." Lockdown

Order at 1.  Taylor has not presented any evidence to contradict this finding, let alone "clear and

convincing" evidence.  28 U.S.C. § 2254(e)(1).  In any event, if the lockdown order were

otherwise valid, there is no reason why the prosecutor's motive in bringing it would represent a

constitutional violation.

      E.     <u>Trial Court's Failure to Appoint New Counsel (Issue 5)</u>

Taylor argues that the trial court deprived him of due process and hindered his right to

aid in his defense by failing to grant his requests for new counsel and the appointment of a

ballistics expert and private investigator.  <u>See</u> Am. Pet. ¶ 9(5).  Taylor raised this claim on his

440.10 motion, <u>see</u> 440.10 Mem. at 27-32, and the court deemed it procedurally barred under

N.Y. Crim. Proc. Law § 440.10(2)(c) inasmuch as it was record-based and should have been

raised on direct appeal.  <u>See</u> 440.10 Decision at 4.  Indeed, such an application would have had

to have been record-based, or else it could not have been presented to the trial judge.  As was

discussed in section III.A.3 above, the procedural bar reflected in § 440.10(2)(c) is an

independent and adequate state ground.  Accordingly, this claim cannot be reviewed by this

Court.

      F.     <u>Request for Transcripts (Issues 9 & 14)</u>

Taylor argues that his rights to due process and equal protection of the law were violated

by the Appellate Division's refusal to furnish him with transcripts of all proceedings in his case

for the purpose of preparing a <u>coram nobis</u> petition.  <u>See</u> Am. Pet. ¶ 9(9); Pet. Mem. at 40-43.  It

appears that Taylor is basing his claim on a refusal to furnish him with transcripts of pre-trial

proceedings – not the transcript of the trial itself.  <u>See</u> Affidavit/Attachment to Petition at 6-7;

Mot. for Transcripts.[12]  Taylor raised this claim on his motion requesting transcripts, and the

Appellate Division denied his motion without opinion.  See Decision, filed May 17, 2007

(annexed as Ex. R to Resp. Decl.).  Taylor further argues that his rights to due process and equal

protection of the law "demand[] that an indigent defendant be able to utilize Judiciary Law 2(b)

to compel the required documentation for use in post conviction proceedings."  Am. Pet. ¶ 9(14).

Taylor raised this claim on his motion for reargument of his 440.10 motion, see Mot. for 440.10

Recons. at 29-30, and it was denied as "without merit" without further discussion, see Denial of

440.10 Reargument.

Taylor argues that the state, having provided a mechanism for review of constitutional

claims, cannot bar access to that mechanism for indigent defendants.  See Pet. Mem. at 40-42.

He bases this argument on his contention that the New York courts require that a coram nobis

petition be supported by citations to the transcript, citing to People v. Stultz, 2 N.Y.3d 277, 284-

85 (2004).  See Pet. Mem. at 40.  But Stulz articulates no such requirement.  Rather, it states

merely that ineffective assistance of appellate counsel can normally be decided on the record.

See Stultz, 2 N.Y.3d at 284-85.  The Court is unaware of any requirement that a coram nobis

petition contain citations to lower court transcripts, as Taylor contends.  Thus, Taylor has not

demonstrated that the state court's denial of his request for pre-trial transcripts prevents him

from filing a coram nobis petition.

---

[12] Taylor's traverse memorandum suggests that he was not furnished with his trial transcript, Pet. Mem. at 41, 58, although this claim is not made in his 440.10 motion.  The claim that he was not furnished with the trial transcript is plainly untrue, however, as the trial transcript was cited by his attorney on appeal.  See Pet. App. Br.  Taylor has pointed to no law or other requirement obligating a court to furnish a represented defendant with a copy of the trial transcript in addition to the one supplied to his counsel.

In any event, the issue before this Court is whether the failure to furnish transcript of pre-trial proceedings represents the denial of a federal constitutional right – or, more precisely, whether the state court's decision rejecting Taylor's claim to pretrial transcripts to support a coram nobis application is contrary to or an unreasonable application of clearly established federal law.  The Court is unaware of any such law.  While the furnishing of trial transcripts for a direct appeal is constitutionally mandated, see Griffin v. Illinois, 351 U.S. 12 (1956), there is no such right with respect to collateral proceedings, see, e.g., Gonzalez v. Fischer, 2003 WL 22953072, at *13 (E.D.N.Y. Oct. 16, 2003) (petitioner not entitled to a free copy of the trial transcript to prepare a coram nobis motion).

G.    Taylor's Motion to Stay the Proceedings (Issues 16-20)

Taylor requests a stay of these proceedings in order to pursue a writ of coram nobis in the New York State courts.  See Am. Pet. ¶¶ 9(16)-(20), 10-13.  The Supreme Court has held:

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

Rhines, 544 U.S. at 277 (citing 28 U.S.C. § 2254(b)(2)).  The Supreme Court in Rhines did not define "good cause" in this context and we are not aware of any circuit court cases addressing it.  Some district courts have held that "good cause" in this context is analogous to the "cause" required to excuse a procedural default – that is, a cause "external" to the petitioner.  See, e.g., King v. Phillips, 2006 WL 3358996, at *2 (E.D.N.Y. Oct. 3, 2006) ("a petitioner must, at the very least, demonstrate that a petitioner's failure to exhaust is attributable to 'external factors,' i.e., that the reasons for the failure are not attributable to the petitioner") (citation omitted);

54

Ramdeo v. Phillips, 2006 WL 297462, at *5-6 (E.D.N.Y. Feb. 8, 2006) ("most of the courts

which have thus far engaged in an in-depth analysis of the issue have required that 'good cause'

arise from something external, and not fairly attributable, to the petitioner").  Other courts have

held that "good cause" in this context requires "a lesser showing" than "cause" in the context of

procedural default.  Aessa v. Annetts, 2007 WL 1299155, at *3 (E.D.N.Y. Apr. 30, 2007) (citing

Bryant v. Greiner, 2006 WL 1675938, at *5 (S.D.N.Y. June 15, 2006)); accord Fernandez v.

Artuz, 2006 WL 121943, at *5-7 (S.D.N.Y. Jan. 18, 2006).

> To decide Taylor's case, we do not find it necessary to define "good cause" beyond

assaying Rhines' own reasoning on this point.  Rhines notes that

> [s]tay and abeyance, if employed too frequently, has the potential to undermine
> . . . AEDPA's objective of encouraging finality by allowing a petitioner to delay
> the resolution of the federal proceedings [and] AEDPA's goal of streamlining
> federal habeas proceedings by decreasing a petitioner's incentive to exhaust all
> his claims in state court prior to filing his federal petition.

Rhines, 544 U.S. at 277.  Here, Taylor argues that the reason for his failure to exhaust his

ineffective assistance of appellate counsel claims is that he believed he could not file a coram

nobis petition unless it contained transcript citations and he could not provide such citations until

he was in possession of the transcripts themselves.  See Pet. Mem. at 58.[13]  Taylor's assertion

that he believed transcript citations were required in a coram nobis petition is not supported by

any legal authorities, however.  In light of the reasoning in Rhines, we cannot conclude that

Taylor has demonstrated "good cause" merely because he has harbored an incorrect belief that

he was required to have transcript citations in his submission to the Appellate Division.  Taylor

---

[13]  While Taylor refers both to pre-trial and trial transcripts, id., we have already
explained that in fact his attorney had possession of the trial transcripts.  See section III.F above.

has known the nature of his appellate attorney's performance since April 2003, when Taylor's appellate brief (containing copious trial transcript citations) was submitted to the Appellate Division. In other words, for more than six years Taylor has chosen to forbear from raising his ineffective assistance of appellate counsel claims until he obtained documents that are not required for the assertion of such claims.

 To find that Taylor's mistaken and unreasonable insistence that he was barred from filing the coram nobis petition constituted "good cause" to file earlier would "essentially endorse a standard which would eviscerate Rhines and undermine one of the AEDPA's twin purposes by greatly decreasing a . . . petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." Ramdeo, 2006 WL 297462, at *7 (holding that ignorance of the law is not "good cause") (citation and internal quotation marks omitted).

Because Taylor has not demonstrated good cause for his failure to exhaust these claims prior to filing a petition for habeas corpus, we need not determine whether the claims are "plainly meritless." The motion for a stay as to these claims should be denied. Thus, these claims remain unexhausted.

When a habeas corpus petition includes unexhausted claims, a court has two options: it can either dismiss the entire petition as a "mixed petition" of exhausted and unexhausted claims, see Rhines, 544 U.S. at 274-75; or it can give the petitioner the opportunity to amend the petition to exclude the unexhausted claims, see id. at 278. As was true for Taylor's claim regarding his 1997 plea, see section III.B.4 above, we will assume that Taylor would prefer to exclude the

Jodi A. Danzig
Assistant Attorney General
120 Broadway
New York, NY 10271

unexhausted claims rather than have the petition dismissed in its entirety.[14]

## IV.   CONCLUSION

For the foregoing reasons, Taylor's petition and application for a stay should be denied.

### PROCEDURE FOR FILING OBJECTIONS TO THIS
### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have ten (10) days from service of this Report and Recommendation to

serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any

responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon.

Richard J. Holwell, and to the undersigned, at 500 Pearl Street, New York, New York 10007.

Any request for an extension of time to file objections must be directed to Judge Holwell.  If a

party fails to file timely objections, that party will not be permitted to raise any objections to this

Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: August 27, 2009
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Keith Taylor
00-A-4201
Five Points Correctional Facility
Caller Box 119, State Route 96
Romulus, NY 14541

---

[14] Obviously, nothing herein prevents Taylor from presenting his ineffective assistance of appellate counsel claims to the Appellate Division in a coram nobis application today, even if these claims cannot be reviewed as part of any federal habeas petition.

57